IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No.7:22-CV-125

JOHN BELT, JR.,

JOYCE LUKEN, as representative of the estate of
JOHN B. LUKEN,

BEVERLY MCCLAIN, on her own behalf and as
representative of the estate of RUDY MCCLAIN,

    Plaintiffs,

  v.

UNITED STATES OF AMERICA,

    Defendant.

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MEMORANDUM OF LAW ON
ADMINISTRATIVE EXHAUSTION**

  Virtually ignoring text, structure, and precedent, the government stakes its misguided re-exhaustion argument on a view of statutory purpose that makes no sense. This Court should apply the CLJA as written.

  1. The government dismisses as "technical arguments" the core elements of statutory interpretation: "the statutory text [and] structure," *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1814 (2019). ECF 17 ("Gov't Mem."), at 4. With respect to exhaustion, the language of the CLJA could not be clearer: Before filing suit, a plaintiff must present an administrative claim to the Navy and the Navy must deny that claim. CLJA § 804(h); 28 U.S.C. § 2675(a). Plaintiffs did precisely that. Not a word of the statute suggests that claims exhausted before the enactment of the CLJA's new cause of action do not count. To the contrary, the term "claim" in Section 2675(a) has always been understood to refer only to the facts giving rise to the injury and a demand for money, not legal theories or causes of action; the CLJA makes clear that the relevant "claim[s]" preexisted its enactment; and the alternative two-year statute of limitations strongly suggests that previously exhausted claims qualify. ECF 15 ("Opening Mem."), at 3–7. And to the extent the question is close, the canon in favor of servicemembers resolves any doubt. *Id.* at 7.

The government makes almost no effort to reconcile its position with the CLJA's plain text. *See* Gov't Mem. 7–9. The government never identifies what words in the statute disqualify pre-CLJA exhausted claims—because there are no such words. The most the government can muster (on page 9) is to assert that "[w]hen Congress intends to give retroactive effect to prior claims, it specifically so states." But the government cites *no precedent at all* for that point, instead relying on an obscure provision of an unrelated statute that is irrelevant for the reasons explained in Plaintiffs' opening memorandum (which the government effectively concedes by failing to respond). Opening Mem. 6. Moreover, Plaintiffs do not seek "retroactive" effect but rather *prospective* effect for their already-denied claims.

The government also argues that veterans—many of whom are suffering from serious or terminal illnesses as the result of the government's mismanagement—will somehow *benefit* from a further six-month delay in obtaining judicial relief, and so the canon in their favor does not apply. But men and women confronting life-threatening diseases would clearly be prejudiced by further delay in litigating claims that they long ago properly exhausted. Gov't Mem. 10. In any event, nothing in Plaintiffs' interpretation prevents servicemembers from filing a second administrative claim if they want to do so. And the government's passing suggestion that the Armed Forces canon does not apply to a statute providing compensation for toxic water at a Marine Corps base cannot be taken seriously.

2. Relying principally on a 1966 Senate Report about the FTCA, the government claims that the purpose of the exhaustion requirement would be frustrated unless plaintiffs who already filed administrative claims are required to file them again. Gov't Mem. 5–7. But the report says nothing whatsoever about whether a claimant must re-submit the same administrative claim that was already exhausted if he or she wishes to sue under a new statutory cause of action. S. Rep. No. 1327, 89th Cong., 2d Sess. (1966). Moreover, the report makes clear that the function of the exhaustion requirement is to give the agency that has "the best information concerning the activity which gave rise to the claim" an adequate "opportunity for investigation," *id.* at 3–4 (internal quotation marks omitted). As Plaintiffs have explained, the Navy had every incentive to investigate Plaintiffs' claims when they were filed between 2012 and 2015. Opening Mem. 8–9. The government offers four responses, but none salvages its argument.

*First*, the government doubles down on its argument that it had no need to conduct an investigation in the six months after Plaintiffs filed their claims because it *ultimately* succeeded on the statute-of-repose defense—years later. Gov't Mem. 6. Again, that argument does not make logical sense. Government agencies regularly raise legal defenses to FTCA claims. The FTCA nevertheless contemplates that an agency will conduct an adequate investigation when a claim is filed, and the assertion of threshold defenses has no bearing on exhaustion. Here, there is no reason why Congress would have believed that the Navy failed to adequately investigate Camp Lejeune claims when they were originally filed.

*Second*, the government says that it lacked an adequate opportunity to investigate the claims "under the standards of the CLJA." Gov't Mem. 7. But even putting aside that Section 2675(a) does not require notice of the legal theories that a plaintiff may later pursue in court, the government's assertion is not accurate. The CLJA does not add any substantial new factual issues to investigate; to the contrary, it *narrows* the scope of the issues, reducing liability to a question of causation. The government's investigation when Plaintiffs previously filed their claims would necessarily have included the issue of causation. Although the CLJA may change the government's settlement calculus in individual cases, the government is fully capable of making a settlement offer now based on its prior investigation and the streamlined standards of the CLJA.

*Third*, the government hyperbolically claims that Plaintiffs' view would "largely nullif[y] the administrative exhaustion requirement." Gov't Mem. 1, 6–7. That is clearly wrong. Given that an estimated one million people may have been exposed to the toxic water between 1953 and 1987, there may be hundreds of thousands of claimants. Only a tiny fraction of that number—a few thousand—filed claims before the enactment of the CLJA. Gov't Mem. 2. Indeed, the government itself notes that out of the "several thousand" administrative claims filed since the enactment of the CLJA, less than 200 hundred were filed by individuals who previously exhausted. Gov't Mem. Ex. A, ¶ 6. Contrary to the government's submission, therefore, Congress had a clear reason to "reaffirm[] the exhaustion requirement" (Gov't Mem. 6)—to ensure that *new* claimants would exhaust, which the statute would not otherwise have required.

*Finally*, the government finds it relevant that some of the plaintiffs who previously exhausted have

elected to file second administrative claims in parallel to their CLJA actions. But how certain plaintiffs choose to proceed has no bearing on the proper interpretation of the CLJA. And in any event, the government's argument is misguided. Those claimants—many desperate for compensation as they struggle with serious diseases—most likely filed new claims out of an abundance of caution pending this Court's resolution of the re-exhaustion issue. The fact that some plaintiffs "state additional injuries" or "have changed the value of the claim demand" (Gov't Mem. 7) is perfectly consistent with that purpose. Under Section 2675, those plaintiffs' CLJA actions may seek greater recoveries than their original claims based on "newly discovered evidence" or "proof of intervening facts," 28 U.S.C. § 2675(b)—such as the development of new medical conditions after the claims were exhausted. But if this Court rules that they are required to re-exhaust, the new administrative claims presumably must state the additional harms and greater monetary demands.

## CONCLUSION

This Court should hold that plaintiffs who already exhausted their administrative claims before the enactment of the Camp Lejeune Justice Act are not required to re-exhaust the same claims.

Respectfully submitted this 17th day of November, 2022.

/s/ Zina Bash
Zina Bash
KELLER POSTMAN LLC
111 Congress Avenue, Suite 500
Austin, TX 78701
512-620-8375
zina.bash@kellerpostman.com
Texas State Bar No. 24067505
*Lead Counsel for Plaintiff*

Warren Postman
KELLER POSTMAN LLC
1100 Vermont Ave., N.W.
Washington, D.C. 20005
202-918-1870
wdp@kellerpostman.com
District of Columbia Bar No. 995083
*Lead Counsel for Plaintiff*

/s/ W. Michael Dowling
W. Michael Dowling
THE DOWLING FIRM PLLC
Post Office Box 27843
Raleigh, North Carolina 27611
Telephone: (919) 529-3351
Fax: (919) 529-3351
mike@dowlingfirm.com
State Bar No. 42790
*LR 83.1(d) Counsel for Plaintiffs* (in association with Keller Postman LLC)